UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARY W., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-02335-SEB-TAB |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,[1] | ) ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S REQUEST FOR REMAND**

**I.   Introduction**

Plaintiff Mary W. appeals the Social Security Administration's denial of her application for disability insurance benefits.  Plaintiff argues that the residual functional capacity assessed by the Administrative Law Judge did not account for restrictions due to Plaintiff's psychological impairments.  In addition, Plaintiff claims substantial evidence does not support the ALJ's conclusion that she could sustain work at the medium exertional level.  However, the ALJ's decision reflects a reasoned and thoughtful analysis of the record evidence, consideration of all of Plaintiff's impairments, including her nonsevere mental impairments, and proper assessment of Plaintiff's subjective symptoms and testimony.  Substantial evidence supports the ALJ's conclusion that Plaintiff could sustain work at the medium level.  Thus, any error in the ALJ's decision is harmless.  Accordingly, Plaintiff's request for remand [Filing No. 14] should be denied.

---

[1] According to Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

**II.     Background**

On July 7, 2018, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. The SSA denied her claim initially and upon reconsideration. Following a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was disabled. First, the ALJ noted that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2022. Next, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 16, 2018, the alleged onset date. At step two, the ALJ determined that Plaintiff had the following severe impairments: hearing loss, peripheral vascular disease of the left leg, and obesity. [Filing No. 11-2, at ECF p. 18.] The ALJ found that Plaintiff's medically determinable mental impairments of depression and anxiety do not cause more than minimal limitation in her ability to perform basic mental work activities and are therefore nonsevere.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Before reaching step four, the ALJ determined Plaintiff's residual functional capacity, or her remaining ability to function despite her limitations. The ALJ concluded that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c), with the following limitations: "only occasional use of foot controls with the left lower extremity; occasional climbing of ramps and stairs, but no climbing of ladders, ropes, or scaffolds; only occasional exposure to concentrated noise; and no more than occasional telephone usage." [Filing No. 11-2, at ECF p. 22.] At step four, the ALJ concluded that Plaintiff could perform past relevant work as an office cleaner, janitor, mail clerk, and file clerk.

Accordingly, the ALJ concluded that Plaintiff has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of the ALJ's decision.

### III.   Discussion

Plaintiff argues that the RFC does not account for restrictions due to her psychological impairments, which the ALJ determined were not severe, and that substantial evidence does not support the ALJ's conclusion that she could sustain work at the medium exertional level.  The Court reviews the ALJ's decision to determine whether the ALJ's factual findings are supported by substantial evidence.  *See, e.g., Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings shall be conclusive if supported by substantial evidence."  (Internal quotation marks omitted)).  "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner.  Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled."  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

#### A.   Psychological impairments

Plaintiff argues that the ALJ failed to account for restrictions due to her mental impairments in her RFC and failed to build a logical bridge to the conclusion that Plaintiff would not have any psychological limitations.  [Filing No. 14, at ECF p. 12-13.]  At step two, the ALJ found that Plaintiff had severe impairments of hearing loss, peripheral vascular disease of the left leg, and obesity.  The ALJ also assessed Plaintiff's other alleged impairments and concluded that Plaintiff's depression and anxiety were not severe.  The ALJ further elaborated that Plaintiff's

medically determinable mental impairments, considered singly and in combination, did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities. [Filing No. 11-2, at ECF p. 19.]

While Plaintiff correctly recognizes that the ALJ must consider all of Plaintiff's impairments in assessing her RFC, including those that are not severe, Plaintiff's argument improperly conflates the concept of assessing all impairments with failing to include all functional limitations from those impairments. The ALJ's decision reflects consideration of all of Plaintiff's impairments, including her depression and anxiety. The ALJ provided detailed summaries and citations to substantial medical and non-medical evidence related to Plaintiff's mental impairments. [Filing No. 11-2, at ECF p. 18-21.] For instance, the ALJ assessed the paragraph B criteria and found Plaintiff's medically determinable mental impairments caused no more than mild limitation in any of the functional areas and that the evidence did not otherwise indicate more than a minimal limitation in Plaintiff's ability to do basic work activities. [Filing No. 11-2, at ECF p. 21.] In support, the ALJ cited to the findings of two state agency psychological consultants, who agreed Plaintiff did not have a severe mental impairment and indicated she had no more than mild limitations in functioning. The ALJ found these opinions overall to be highly persuasive.

The ALJ also analyzed and cited to the records of consulting psychologist E. Ann Miller, Ph. D. [Filing No. 11-2, at ECF p. 19.] The ALJ noted that Dr. Miller observed Plaintiff was oriented, maintained good eye contact, had a normal rate of speech with loud volume, had normal expressive speech and receptive language skills, and performed relatively well on cognitive tasks. The ALJ recited Dr. Miller's diagnostic impression that Plaintiff had persistent depressive disorder, social anxiety disorder, alcohol use disorder (sustained full remission by

report), and nicotine use disorder. [Filing No. 11-2, at ECF p. 19.] The ALJ further considered Dr. Miller's medical source statement, in which she opined Plaintiff had no more than mild limitations in understanding, remembering, or carrying out complex instructions, or making decisions on complex work-related decisions; and mild to moderate limitations in interacting with coworkers and supervisors, but only mild limitation in interacting with the public due to social anxiety and a reported history of alleged harassment in the workplace. [Filing No. 11-2, at ECF p. 20.] The ALJ found Dr. Miller's opinion to be highly persuasive as well.

Plaintiff does not challenge the ALJ's reliance on the state agency consultants or the fact that she found their opinions and that of Dr. Miller highly persuasive. Rather, Plaintiff contends that despite finding Dr. Miller's opinion highly persuasive, the ALJ failed to explain why she did not include any restrictions in Plaintiff's RFC to account for mild to moderate limitations in interacting with co-workers and supervisors. In addition, Plaintiff claims that the ALJ did not address Plaintiff's reports of how she was treated in the workplace. However, the ALJ noted in her decision that Plaintiff had social anxiety, with a reported history of alleged harassment in the workplace. [Filing No. 11-2, at ECF p. 20.] And in assessing Plaintiff's RFC, the ALJ directly referenced Plaintiff's claim that she was often bullied in the work environment due to her loud volume of speech. However, the ALJ concluded:

> Despite the claimant's complaints, I find no indication that she cannot sustain full time work environment due to mental health issues. She did seek therapy for a short period of time, but she largely focused on stressors in her life, rather than issues related to her hearing loss. During examinations, the claimant was able to communicate appropriately. For instance, during her physical consultative examination, she did have a very high-pitched voice while talking, but she was still able to interact as needed.

[Filing No. 11-2, at ECF p. 26.] Ultimately, the ALJ found Plaintiff had only mild limitations in interacting with others, based in part upon her ability to interact appropriately during her

5

psychological consultative examination with Dr. Miller, and no more than minimal limitation in Plaintiff's ability to perform basic mental work activities.

The ALJ's decision reflects consideration and a reasonable analysis of Plaintiff's reported complaints.  The ALJ thoroughly considered Plaintiff's mental impairments, provided an analysis of her allegations, and cited to evidence supporting the ALJ's conclusion that no mental limitations were necessary.  It is not the role of the Court to re-weigh the evidence.  *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) ("The court's role is not to reweigh evidence, but to determine whether the ALJ built an accurate and logical bridge between the evidence and the conclusion."  (Internal citation and quotation marks omitted)).

Moreover, while Plaintiff references Dr. Miller's opinion that Plaintiff had a mild to moderate limitation in interacting with coworkers, Plaintiff does not cite to any evidence in the record of specific work restrictions that the ALJ supposedly omitted.  *See, e.g., Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("[E]ven if the ALJ's RFC assessment were flawed, any error was harmless.  It is unclear what kinds of work restrictions might address Jozefyk's limitations in concentration, persistence, or pace because he hypothesizes none."  (Internal citation omitted)).  In addition, the vocational expert testified that Plaintiff could perform past relevant work even if the ALJ included a restriction limiting her to no more than occasional interaction with coworkers.  Thus, to the extent that Plaintiff's argument could be interpreted as stating that she should have been limited to occasional interactions with others, any error was harmless, and remand should not be required.  *See, e.g., Fisher v. Brown*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

6

### B.     Medium exertional level

Plaintiff also argues that substantial evidence does not support the ALJ's conclusion that she could sustain work at the medium exertional level. [Filing No. 14, at ECF p. 14.] The ALJ concluded that Plaintiff could perform medium work with only occasional use of foot controls with the left lower extremity; occasional climbing of ramps and stairs, but no climbing of ladders, ropes, or scaffolds; only occasional exposure to concentrated noise; and no more than occasional telephone usage. [Filing No. 11-2, at ECF p. 22.]

Plaintiff notes that while the ALJ summarized much of the evidence in the record, the ALJ did not mention that an examiner concluded in a functional capacity exam in May 2019 that Plaintiff should lift no more than 20 pounds frequently and 32 pounds occasionally to avoid putting herself at significant medical risk. [*See* Filing No. 11-7, at ECF p. 305.] The Commissioner acknowledged that the ALJ did not address this aspect of the functional capacity exam, but argues that it does not amount to harmful error because (1) it was only a recommendation based on a one-time examination by a physical therapist (not Plaintiff's physician or someone with a treatment relationship) and (2) the recommendation is not consistent with other evidence of record relied on by the ALJ. Additionally, as noted above, the VE identified and the ALJ found that Plaintiff could perform past relevant work, and three of the past jobs referenced were at the light level. These jobs would more than account for the lifting limitation noted. *See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.").

In addition, Plaintiff claims that the ALJ overstated Plaintiff's ability to function. Plaintiff references the fact that the ALJ noted that she walked to search for rocks for four to five hours and walked at the grocery store three times a week. [Filing No. 14, at ECF p. 14.]

7

Plaintiff argues that this is an overstatement because she testified that she drove downtown to look for rocks, because the two to three miles was too far for her to walk, and when she was out walking for rocks, she sat down about every 30 minutes to an hour because of pain.  However, the ALJ directly referenced Plaintiff's hearing testimony regarding walking and her allegations that she had to sit down every 30 minutes to one hour.  [Filing No. 11-2, at ECF p. 26.]  The ALJ's decision does not overstate or improperly recite Plaintiff's testimony.

Plaintiff claims that the ALJ did not address her need to sit for pain relief and that this need contradicted the ALJ's conclusion that Plaintiff could sustain the standing and walking requirements of medium work.  Plaintiff further argues that the ALJ erroneously relied on her statement that she could work "fairly well," claiming that statement is not well defined and "could very well mean that walking well included periods of time to rest and sit."  [Filing No. 14, at ECF p. 15.]  The ALJ considered Plaintiff's testimony in the context of the medical record, which she found did not support further limitations for a need to sit.  The ALJ noted medical findings indicating that Plaintiff's walking had improved over time, routine ultrasounds showed continual improvement in her ankle brachial index, and Plaintiff walked with a normal gait at a consultative exam in October 2018.  [Filing No. 11-2, at ECF p. 24.]  In addition, at that exam, Plaintiff retained full strength, and was able to walk on her heels and toes, as well as squat and jump.  No physicians ever imposed the limitations Plaintiff suggests, and both state agency physicians opined that Plaintiff could sit, stand and/or walk for six hours of an eight-hour workday.  Plaintiff did not report any limitation in walking, standing, or sitting at her functional capacity evaluation.  Thus, substantial evidence supports the ALJ's conclusion.  Plaintiff's

argument amounts to nothing more than an improper invitation for the Court to reweigh the evidence.[2]

## IV. Conclusion

The ALJ's RFC assessment reasonably considered the impact of Plaintiff's nonsevere mental impairments. In addition, the ALJ thoroughly addressed the evidence in the record and Plaintiff's testimony regarding her subjective symptoms, and concluded that Plaintiff could sustain past relevant work at the medium level. Accordingly, for reasons stated above, Plaintiff's request for remand [Filing No. 14] should be denied. Any objection to the magistrate judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within 14 days shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 10/14/2021

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

---

[2] Plaintiff also briefly references having a decreased range of motion in her neck and degenerative joint disease deformity in the musculoskeletal system. However, she did not testify about any issues regarding her neck at the hearing. No physicians placed limitations on Plaintiff due to this issue or recommended significant treatment. Plaintiff raises additional arguments about ongoing neck pain and claims that the ALJ improperly interpreted subsequent evidence in her reply brief, but these citations and arguments are raised for the first time in reply. This is improper. *See, e.g., Carter v. Astrue*, 413 Fed. App'x 899, 906 (7th Cir. 2011) ("Carter waived this argument by raising it for the first time in his reply brief[.]"). Thus, Plaintiff's requests for remand related to arguments surrounding neck issues are improper and unpersuasive.